U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 2 2 2015

TONY R. MOORE, CLERK
BY ___YT___
              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

a

| | |
|---|---|
| **WILLIAM STAMPS** (Reg.# 10953-042) | DOCKET NO. 15-CV-218; SEC. P |
| **VERSUS** | JUDGE DEE D. DRELL |
| **FREDRICK MENIFEE, ET AL.** | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the Court is the civil rights complaint of pro se plaintiff William Stamps, filed *in forma pauperis* and pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)[1]. Plaintiff is an inmate in the custody of the United States Bureau of Prisons (BOP), incarcerated that the United States Penitentiary - Hazleton, in Bruceton Mills, West Virginia. He complains that he was exposed to unconstitutional conditions of confinement and received inadequate medical care at USP-Pollock, in violation of the Constitution. He named approximately twenty USP Pollock employees as defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.

### *Factual Allegations*

Plaintiff alleges that, from 2006 to 2011, USP-Pollock

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

"allowed faulty roofing and H-VAC inadequacies to prolong exist for years which provided the conditions for toxic mold growth and existence that which directly and indirectly caused plaintiff's injuries." [Doc. #5, p.8] Plaintiff complains that, upon his arrival at USP-P in 2006, he began having skin irritations, such as rashes and hives. He claims that, in 2008, he began having more severe allergic reactions such as swelling of lips, eyes, face, and body, which continued until he left USP-P in 2013.

He alleges that, in September 2011, environmental testing revealed the existence of "toxic mold" in areas where faulty roofing and H-VAC inadequacies had existed for years. Plaintiff claims that this "toxic mold" caused him to suffer "permanent allergies, infections, damage to digestive system, urticaria and angioedema, keloids, and scar tissue." He further complains that the medication he received to treat allergies, Prednisone, caused muscle rupture and tears, weight gain, high blood sugar, blurry vision, and suppression of immune system. [Doc. #5, p.10]

Plaintiff alleges that an allergy test in 2010 revealed that he had a mold allergy. The environmental mold was discovered at USP-P in 2011. Plaintiff claims that, on December 10, 2012, and January 30, 2013, despite him having a Penicillium mold allergy, Nurse Practitioner Roberts and Physician Assistant Price prescribed Amoxicillin, which he alleges is derived from Penicillium mold. [Doc. #5, p.11] He claims that this caused him "further injury."

[Doc. #5, p.11]

He complains that, after he was diagnosed with urticaria and angioedema, he underwent a "cosmetic skin surgical procedure," which he would not have done had Defendant Alexander and Molina informed him that his skin conditions would affect his healing process from the elective procedure. [Doc. #5, p.11]

Plaintiff alleges that, on June 25, 2011, he tore a muscle in his leg. He was not examined by a doctor for fourteen days. Approximately forty-five days later, on August 19, 2011, Plaintiff was examined by an orthopedist. [Doc. #5, p.12] The orthopedist told Plaintiff that too much time had passed for corrective surgery to be performed. Plaintiff attributes the delay to Spencer Smith. [Doc. #5, p.12]

On March 23, 2013, Plaintiff filed an informal resolution attempt, complaining that he was not provided mold-free shelter, which caused him injuries. [Doc. #5, p.15] The response stated that his complaint could not be resolved at that level. [Doc. #5, p.15]

Thereafter, on July 11, 2013, Plaintiff submitted his request to the Warden, complaining that he was not provided a mold-free shelter; that he was prescribed Amoxicillin despite his allergy; and, that he wanted to be provided with an EpiPen and special diet. [Doc. #5, p.16-17] The response states that mold was discovered in three areas of FCC Pollock - the Visiting Room, C Unit Team, and

the Warden's Conference room. [Doc. #5, p.16] Plaintiff had been housed in A Unit, where there was never a mold issue identified. Plaintiff complained that he worked for three years as the inmate photographer in the visiting room where mold was present, that he used the education department's restroom daily (where black mold was discovered). The Warden's response provides that the black mold count levels were such that they would not be characterized as "dangerous" levels. [Doc. #5, p.16] The response also indicates that Plaintiff does not have any allergy to Amoxicillin. [Doc. #5, p.16] Finally, the response provides that an EpiPen is not used for treating Urticaria/Angioedema, and that Plaintiff had received dietary education. [Doc. #5, p.17]

Plaintiff appealed the warden's denial to the regional level. The response indicates that, due to roof leaks, minor mold growth was discovered at USP-P. The leaks were repaired and the mold was removed. Plaintiff had a history of urticaria and angioedema since 2008. He had been evaluated for complaints of swelling to face, lips, tongue, fingers, and hands, without systemic involvement or anaphylaxis. Plaintiff was treated with low dose steroids, Benadryl injections and Dopexin, which was successful in treating the urticaria and angioedema. [Doc. #5, p.18] Plaintiff was evaluated by an allergy specialist in 2010, and on September 16, 2010, Plaintiff underwent allergy testing. The tests revealed no food allergies, but did reveal reactions to dust mites and mold,

which can cause nasal allergy symptoms. [Doc. #5, p.18] Plaintiff was evaluated again on September 11, 2013, for complaints of left eye swelling. He was treated and instructed to follow-up if symptoms did not improve. On October 25, 2013, Plaintiff complained of tongue swelling and requested a Benadryl injection. Because there was no evidence of tongue swelling, the request was denied. No other complaints of urticaria or angioedema were noted in the medical records. [Doc. #5, p.18] The response further notes that an EpiPen and special diet are not warranted since Plaintiff has no food allergies or history of anaphylactic reactions. [Doc. #5, p.19] Plaintiff appealed to the national level, but never received a response.

### *Law and Analysis*

1. Statute of Limitations

First, there is no federal statute of limitations. Accordingly, the forum state's statute of limitations for general personal injuries is used in <u>Bivens</u> claims. <u>See</u> <u>Lopez-Vences v. Payne</u>, 74 Fed. Appx. 398 (5th Cir. 2003). In Louisiana, that limitations period is one year. However, federal law is used to determine when a cause of action accrues. <u>Id.</u> "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." <u>Piotrowski</u>, 51 F.3d at 516, quoting <u>Vigman v. Community</u>

National Bank and Trust Co., 635 F.2d 455, 459 (5th Cir. 1981).

Equitable tolling principles apply to civil rights cases filed under Bivens. See Rotella v. Pederson, 144 F.3d 892, 897 (5th Cir. 1998). Thus, Plaintiff is entitled to equitable tolling for the time spent properly exhausting the BOP administrative remedies. See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002) (holding that because the PLRA requires a prisoner to exhaust his administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhausts the remedies); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999) (holding that the statute of limitations applicable to a civil rights complaint should be tolled while the prisoner exhausts his administrative remedies).

Plaintiff sought exhaustion of his administrative remedies as to the following claims: toxic mold exposure; EpiPen and diet; and inadequate medical diagnosis or treatment. He did not exhaust remedies as to his elective skin procedure or torn leg muscle, which occurred in 2011. Nor did he exhaust as to the prescription steroid use. Thus, those claims are prescribed, and Plaintiff is not entitled to equitable tolling on those issues.

2. Conditions of Confinement

It is well settled that prison officials must provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, medical care, and hygiene. See Palmer v.

6

Johnson, 193 F.3d 346, 351-52 (5th Cir. 1999).  A condition of confinement claim, as with other Eighth Amendment claims, must satisfy tests for both objective and subjective components.  Under the objective component, only "extreme deprivations" will establish a conditions of confinement claim.  See Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998).  The subjective component, on the other hand, requires a showing of deliberate indifference to the inmate's health or safety.  See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  To establish deliberate indifference, the inmate must allege facts which, if proved, show that prison officials were aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk.  See Hare v. City of Corinth, 74 F.3d 633, 649 (5th Cir. 1996).  An official's failure to alleviate a significant risk which he should have perceived, but did not, cannot be condemned as the infliction of punishment.  See Farmer, 511 U.S. at 837-38; see also Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

Plaintiff has not set forth facts alleging deliberate indifference.  He does not claim that the defendants were aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk.  First, the exhibits show that the mold count was not in the "dangerous" levels, so there was no substantial risk of harm.  Next, the complaint and exhibits specifically show that the defendants were **not** indifferent to water

7

leaks or mold; rather, the leaks were repaired and the mold was removed upon discovery. Plaintiff does not allege an extreme deprivation, nor does he claim that any defendants intentionally exposed him to mold or knew of, but failed to alleviate, a substantial risk of harm.

Moreover, several courts have concluded that sinus congestion, headaches, and eye irritation due to mold and mildew exposure constitutes de minimis harm, if anything, and are not sufficient to demonstrate the requisite physical injury for purposes of 42 U.S.C. §1997e(e). See Mayes v. Travis State Jail, Civil No. A-06-CA-709, 2007 WL 1888828 (W.D.Tex. June 29, 2007) (citing Gill v. Shoemate, Civil No. A-05-CV-2124, 2006 WL 1285412, *5 (W.D.La. May 8, 2006); Smith v. Fox, Civil No. 4:05-CV-1554, 2006 WL 2090170, *6 (D.S.C. July 25, 2006)); see also Vega v. Hill, Civil No. 3-05-CV-1577, 2005 WL 3147862 (N.D.Tex. Oct.14, 2005) (finding that conclusory allegations of "bad headaches, sleeplessness," and "dizziness" due to exposure was insufficient to establish a physical injury that was more than de minimis ).

3. Medical Care

In order state a deprivation of medical care claim, a prisoner must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble, 429 U.S. 97 (1976). In other words, the plaintiff must

show "deliberate indifference" on the part of the defendants. <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). Generally, to state a claim for deliberate indifference to serious medical needs, a Plaintiff must allege that the defendants refused to treat him, purposefully gave him improper treatment, ignored his medical complaints, "or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006)(internal quotation marks and citation omitted). Even *unsuccessful treatment, medical malpractice, and acts of negligence* do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. <u>See</u> <u>id.</u>

First, Plaintiff has not identified a serious medical need. He suffers from urticaria and angioedema, which have been treated with oral anti-inflammatory medication and antihistamines. His health has been regularly and continuously followed by the medical department, as per the exhibits. His blood sugar is monitored while on prednisone. He has had numerous appointments with medical staff. His allergy tests revealed no food allergies, but did reveal reactions to dust mites and mold, which can cause nasal allergy symptoms. [Doc. #5, p.18]

Next, Plaintiff has not alleged that the defendants refused to treat him, purposefully gave him improper treatment, ignored his medical complaints, or engaged in any similar conduct that would

clearly evince a wanton disregard for any serious medical needs. Plaintiff was evaluated on September 11, 2013, for complaints of left eye swelling. He was treated and instructed to follow-up if symptoms did not improve. On October 25, 2013, Plaintiff complained of tongue swelling and requested a Benadryl injection. However, because there was no evidence of tongue swelling, the request was denied. No other complaints of urticaria or angioedema were noted in the medical records. [Doc. #5, p.18] Plaintiff presented a claim for negligence, at best.

To the extent that Plaintiff disagrees with his diagnosis or the treatment received, he does not state a claim for relief. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

*Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted, pursuant to 28 U.S.C. §1915(e)(2)(B) and 1915A.

*Objections*

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the**

magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 21st day of April, 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE